UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:24-CV-00076-HBB

EDNA C.[1]                                                                                                    PLAINTIFF

VS.

LELAND DUDEK,
Acting Commissioner of Social Security[2]                                    DEFENDANT

**MEMORANDUM OPINION
AND ORDER**

## I.    BACKGROUND

Before the Court is the Complaint (DN 1) of Edna C. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff and Defendant have filed briefs (DN 12, 15). Plaintiff filed a reply (DN 16). For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10). By Order entered October 1, 2024 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.
[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted as the defendant in this suit.

## II.    FINDINGS OF FACT

On October 25, 2021, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 215-17, 218-21). Plaintiff alleged that she became disabled on September 9, 2020, as a result of degenerative disc disease, high cholesterol, spinal stenosis, depression, surgery on her neck for spinal cord replacement, sinus tachycardia, bulging disc removed and replaced with metal disc, diabetes, high blood pressure, screws in her right ankle, uncontrollable shaking in the hands and legs, and muscle contractions in the hands (Tr. 98, 106). The application was denied initially on December 8, 2021, and upon reconsideration on March 10, 2022 (Tr. 61, 97, 114). On March 10, 2022, Plaintiff filed a written request for hearing (Tr. 61, 141-42).

On November 16, 2022, Administrative Law Judge Stacey Foster ("ALJ") conducted a video hearing (Tr. 61, 77). Plaintiff and her counsel, Anthony Tanoos, participated, and Plaintiff testified during the hearing (*Id.*). Jessica Coles, an impartial vocational expert, testified during the hearing (*Id.*).

In a decision dated February 13, 2023, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 61-69). The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2025 (Tr. 63). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 9, 2020, the alleged onset date (*Id.*). At the second step, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; diabetes mellitus; obesity; and syncope (*Id.*). The ALJ also determined that Plaintiff has the following non-severe impairments: major depressive disorder or any other discrete mental disorder (Tr. 63-64). At the third step, the ALJ

concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 64).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) subject to the following: no climbing of ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, crawling, or climbing of ramps and stairs; no overhead reaching with the upper extremities; frequent handling and fingering with the right upper extremity; avoid all exposure to hazards; and requires the use of a cane for ambulation (*Id.*). Additionally, the ALJ determined that Plaintiff is unable to perform any past relevant work (Tr. 67).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 68-69). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (*Id.*). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from September 9, 2020, through the date of the decision (Tr. 69).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 212-14). The Appeals Council denied Plaintiff's request for review (Tr. 15-17).

### III. CONCLUSIONS OF LAW

#### A. Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680,

683 (6th Cir. 1992), and whether the correct legal standards were applied. *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F.3d at 695 (quoting *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Hum. Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 15-17). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton*, 2 F.3d at 695-96.

### B.  The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. § 401 et seq. (Title II Disability Insurance Benefits). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A) (Title II); 20 C.F.R. § 404.1505(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. § 404.1520. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

20 C.F.R. § 404.1520(a)(4)(i)-(v). Here, the ALJ denied Plaintiff's claim at the fifth step.

### C. **Challenges to Finding No. Five**

#### 1. *Arguments of the Parties*

Plaintiff takes exception to the ALJ's RFC determination by raising two related arguments (DN 12 PageID # 909, 912, 913-19, 919-23). First, Plaintiff asserts that RFC is not supported by substantial evidence because the ALJ rejected the medical opinions in the record and made the complex RFC findings based on her own lay interpretation of raw medical data (*Id.* at PageID # 913-19) (*Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp.2d 908, 912 (N.D. Ohio 2008)). Next,

Plaintiff argues that the ALJ's persuasiveness finding as to Dr. Marchand's medical opinion is not supported by substantial evidence due to her failure to evaluate the consistency of the opinion and a deficient evaluation of the supportability of the opinion (*Id.* at PageID # 919-23).

In response, Defendant contends that the ALJ found Dr. Marchand's opinions "were not *particularly* persuasive; in other words, she concluded that they were not *fully* persuasive" (DN 15 PageID # 933). Defendant asserts that the ALJ adopted some of the limitations opined by Dr. Marchand and rejected other more extreme limitations that were not consistent with or supported by evidence in the record (*Id.* at PageID # 933-38). Defendant argues the ALJ's persuasiveness finding as to Dr. Marchand's opinions is supported by substantial evidence and comports with applicable law because she addressed both the supportability and consistency of those opinions (*Id.* at PageID # 938-41). Additionally, Defendant indicates the ALJ properly considered Dr. Marchand's medical opinions in making her RFC findings (*Id.* at PageID # 941-943).

In reply, Plaintiff reiterates the ALJ rejected the opinions of Dr. Marchand and the state agency medical consultants, and she is not qualified to interpret raw medical data in functional terms (DN 16 PageID # 945-48). Plaintiff suggests that Defendant's argument—the ALJ adopted certain limitations opined by Dr. Marchand—is nothing more than impermissible *post hoc* rationalizations (*Id.* at PageID # 946-47) (citing *Warren v. Comm'r of Soc. Sec.*, No. 3:23-00077-SKL, 2024 WL 409390, at *7 (E.D. Tenn. Feb. 2, 2024)).

### 2. *Applicable Law*

The RFC determination is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c). Administrative Law Judges make this finding based on a

consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). Thus, in making the RFC determination Administrative Law Judges must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

The new regulations for evaluating medical opinions and prior administrative medical findings are applicable to Plaintiff's case because she filed her application after March 27, 2017 (Tr. 61, 218-21). *See* 20 C.F.R. § 404.1520c. The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[3] in the record, even if it comes from a treating medical source. 20 C.F.R. § 404.1520c(a).[4] Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. § 404.1520c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1)-(5).[5] Of these five factors, the two most important are supportability and consistency. 20 C.F.R. § 404.1520c(a) and (b)(2). Further, the regulation requires Administrative Law Judges to explain how they

---

3 At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings." 20 C.F.R. § 404.1513a(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation. 20 C.F.R. § 404.1513a(b)(1).
4 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 404.1527(c)(2).
5 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 404.1520c(c)(3)(i)-(v).

considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Notably, under the regulations Administrative Law Judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 404.1520c(b)(2).

### 3. *Discussion*

The medical evidence is set forth in thirteen exhibits[6] (Tr. 332-57, 358-410, 411-35-436-39, 440-45, 446-48, 450-51, 452-74, 475-799, 800-23, 824-46, 847-67, 868-74). Exhibits 1F and 9F are treatment records received from Advanced Cardiology of Owensboro, dated January 23, 2020 to June 22, 2021 and January 24, 2022 to April 6, 2022, respectively (Tr. 33-57, 452-74). Exhibits 2F and 12F are treatment records received from Santa Claus Family Medicine, dated June 19, 2020 to October 21, 2021 and February 21, 2022 to July 18, 2022, respectively (Tr. 358-410, 824-46). Exhibits 3F and 6F are treatment records received from Dr. David Eggers, dated June 25, 2021 to November 22, 2021 (Tr. 411-35, 446-48). Exhibit 11F is treatment records received from Advanced Rehabilitation, dated March 26, 2022 to April 25, 2022 (Tr. 800-23). Exhibit 10F is records received from Owensboro Health Regional Hospital, dated December 7, 2020 to August 19, 2022 (Tr. 475-799). Exhibit 13F is outpatient records received from Memorial Hospital and Health Care Center, dated October 1, 2020 to August 17, 2022 (Tr. 847-67).

Exhibits 4F, 5F, 8F, and 14F are medical opinions rendered by Dr. Erin E. Marchand, Plaintiff's primary care provider at Santa Claus Family Medicine (Tr. 436-38, 440-45, 451, 869-74). Exhibits 2A and 3A are prior administrative medical findings (Tr. 98-105, 106-13).

---

6 Although the administrative record index identifies fourteen exhibits, Exhibit 7F indicates Advanced Cardiology of Owensboro did not have any records pertaining to Edna C. for the requested time frame (Tr. 449).

Exhibit 4F, is a form entitled "MEDICAL SOURCE STATEMENT OF ABILITY TO DO WORK-RELATED ACTIVITIES (MENTAL)" that Dr. Marchand filled out on November 16, 2021 (Tr. 436-38). On this form, Dr. Marchand merely indicates Plaintiff is unable to work because extreme heat or steam causes her to faint or pass out (*Id.*).

Exhibit 5F is a form entitled "MEDICAL SOURCE STATEMENT OF ABILITY TO DO WORK-RELATED ACTIVITIES (PHYSICAL)" that Dr. Marchand filed out on November 16, 2021 (Tr. 441-45). On this form, Dr. Marchand expresses exertional limitations (lifting/carrying, sitting/standing/walking) that preclude sedentary work (*compare* Tr. 440-41 *with* 20 C.F.R. § 404.1567(a)) (*Id.*). Dr. Marchand also imposes extremely restrictive postural, manipulative, and environmental limitations based on weakness in Plaintiff's right ankle and leg; neck pain (caused by bulging discs and pinched nerves); and fainting or passing out when exposed to heat (*Id.*). Dr. Marchand indicated the limitations were first present in May 2020 (Tr. 445).

At the initial level, the non-examining state agency psychological consultant, Theodore Weber, Psy.D., reviewed the medical evidence in the record and found that Plaintiff's depression was a non-severe mental impairment because it imposed only mild limitations in each of the four broad functional areas known as the "paragraph B" criteria (Tr. 100) (*see* Exhibits 1F-5F).[7] Additionally, the non-examining medical consultant, Neil Armstrong, M.D., reviewed the medical evidence in the record and determined that Plaintiff could perform less than a full range of medium

---

7 The determination whether a mental condition is "severe" is based upon the degree of functional limitation in four broad functional areas that are known as the "paragraph B" criteria. 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E. The four broad functional areas are: "understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). The four broad functional areas are evaluated on the following five-point rating scale: "None, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). If the four areas of mental functioning are rated as "none" or "mild," the Administrative Law Judge will generally conclude that the claimant's impairment is not "severe," unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1).

work due to certain exertional, postural, and environmental limitations (Tr. 101-02) (*see* Exhibits 1F-5F). In making this determination, Dr. Armstrong found Dr. Marchand's functional assessment in Exhibit 5F was not persuasive because it conflicted with the other evidence in the record (Tr. 101).

At the reconsideration level, the non-examining state agency psychological consultant, Paul Anthony Ebben, Psy.D., reviewed the medical evidence in the record and found that Plaintiff's depression was a non-severe mental impairment because it imposed only mild limitations in each of the four broad functional areas known as the "paragraph B" criteria (Tr. 108-09) (*see* Exhibits 1F-6F). Additionally, the non-examining medical consultant, Robert Culbertson, M.D., reviewed the medical evidence in the record and determined that Plaintiff could perform less than a full range of medium work due to certain exertional, postural, and environmental limitations (Tr. 109-112) (*see* Exhibits 1F-6F). In making this determination, Dr. Culbertson found Dr. Marchand's physical functional assessment in Exhibit 5F was not persuasive because it was inconsistent with the other evidence in the record (Tr. 109).

As is common in these cases, the administration received Exhibits 8F through 14F after the state agency psychological and medical consultants reviewed the record and rendered their opinions. *See Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009). Exhibit 8F is a letter dated September 8, 2022, in which Dr. Marchand opined that Plaintiff is unable to drive and work due to experiencing unexpected and untreatable episodes of fainting or passing out (Tr. 451).

Exhibit 14F, is a form entitled "MEDICAL SOURCE STATEMENT OF ABILITY TO DO WORK-RELATED ACTIVITIES (PHYSICAL)" that Dr. Marchand filed out on October 14,

10

2022 (Tr. 440-45). Essentially, there are some exertional, postural, manipulative, and environmental limitations in Exhibit 14F that differ what is set forth in Exhibit 5F (*compare* Tr. 869-74 *with* Tr. 440-45). Yet Exhibit 14F indicates the limitations first presented seven months before Dr. Marchand filed out Exhibit 5F on November 22, 2021 (*compare* Tr. 874 *with* Tr. 445). Consequently, the overlapping time frame addressed by the two exhibits heightens inconsistencies within Dr. Marchand's own opinions.

The ALJ's discussion of the evidence reads:

> The claimant has a history of degenerative disc disease. Notably, she had to undergo a cervical fusion operation of C5-C6 on July 8, 2021, after being documented to have a large disc herniation with cord compression at C5-C6 following a motor vehicle accident on June 11, 2021. (Exhibit 3F/1, 3-4). This surgery appears to have been rather successful and to have offered good relief of the claimant's symptoms. In fact, immediately after her fusion operation, on July 9, 2021, the claimant was noted to have tolerated said operation well and to show improvement of pain. (Exhibit 3F/6). Also, on July 19, 2021, she was noted to have an improved gait/ability to walk and to just be taking Tylenol and muscle relaxants for pain with relief, and, on August 30, 2021, her x-rays were noted to look perfect, and her arm and leg pain was reported to be gone. (Exhibit 3F/7, 11). It too must be mentioned that the claimant did complain on October 21, 2021, that her neck pain had restarted after she had recently been doing a lot of outside work such as caring for her animals. (Exhibit 2F/44). Be that as it may, her right foot weakness was just noted to be intermittent on October 27, 2021, and she was documented to have 5 over 5 strength at this time as well. (Exhibit 3F/12). She too was documented to have 5 over 5 strength despite her pain on November 22, 2021, and magnetic resonance imaging was likewise noted to show a satisfactory postoperative appearance regarding her cervical spine. (Exhibit 6F/1).
>
> I further observe that, contrary to the claimant's testimony, the objective clinical findings do not consistently demonstrate a persistent impairment of right upper extremity function. Nor do they consistently demonstrate the claimant to be using a walker, which would belie the medical necessity of such an assistive device

on a sustained basis. Moreover, recent magnetic resonance imaging relevant to the claimant's lumbar spine in June of 2022 was not very remarkable. It revealed just slight disc degeneration and disc bulging at L3-L4 through L5-S1 with minimal lower lumbar facet arthritic change. (Exhibit 10F/18). It likewise is noted that the claimant appears to have required surgical intervention on her right foot in the past. She was reported on March 24, 2022, to have two plates and 12 screws in her foot. (Exhibit 9F/3). Notwithstanding, she was noted to have a normal gait at this time. (Exhibit 9F/6).

In addition, the claimant is noted to have a history of syncopal episodes, which may be pseudoseizures. Electroencephalography testing in July of 2022 revealed no epileptiform activity. (Exhibit 10F/7). Her history of syncope may also be related to cardiovascular issues. However, she appears to be rather stable from a cardiovascular standpoint. For instance, although the claimant has previously been noted to have sinus tachycardia, diagnostic cardiac testing on March 17, 2022, reflected normal systolic function, and the claimant's hypertension and hyperlipidemia were noted to be stable on March 24, 2022. (Exhibit 9F/2, 6, 8-9).

At the hearing, the claimant testified to passing out four to five times a week. However, such a debilitating frequency of syncope cannot sufficiently be established by the longitudinal treatment narrative. While the claimant did go to the hospital for syncope in June of 2021 and March of 2022, she was indicated in June of 2020 to have been fine regarding syncopal episodes in the past after being put on metoprolol. (Exhibits 2F/1; 10F/76, 172). Her syncopal episodes were also indicated in October of 2021 to have resolved following her fusion operation. (Exhibit 2F/44). The claimant has clearly not consistently been documented to have problems with syncope at a frequency that would have precluded gainful employment for a year or more.

Pursuant to SSR 19-2p, the claimant is noted to have a history of obesity as well. She was documented on June 14, 2022, to stand 5 feet 7 inches in height and to weigh over 232 pounds with a body mass index in excess of 36. (Exhibit 10F/8). Notwithstanding, the claimant's weight status does not appear to have regularly been indicated to excessively interfere with the claimant's ability to function or move about. The claimant also has a history of type 2 diabetes mellitus. However, she does not appear to have routinely been documented having poorly regulated diabetic symptoms. The

claimant's diabetes was described as controlled and without complication on July 18, 2022. (Exhibit 12F/4). It is further significant to note that the claimant has previously been documented engaging in activity inconsistent with her subjective allegations. For example, she was reported to have recently been splitting firewood with a wood splitter in December of 2020. (Exhibit 2F/22).

Again, the weight of the substantial evidence in this case does not reasonably substantiate an incapacitating level of restriction on a sustained basis. Indeed, the exertional limitation testified to by the claimant is certainly not commensurate with the objective record. Still, I find it reasonable to conclude that the claimant would be able to tolerate only sedentary work involving no more than occasional stooping, kneeling, crouching, crawling, or climbing considering that there have been some instances where she has been documented to have diminished right leg strength or issues with right foot drop. (Exhibits 2F/44; 10F/79). Further, given that she has undergone cervical fusion surgery, the claimant should not reach overhead with the upper extremities. Also, although the objective clinical findings do not consistently demonstrate a persistent impairment of right upper extremity function, some benefit of the doubt has been afforded to the claimant's allegations of right hand issues. The claimant is therefore found to be capable of frequent, but not constant, handling and fingering with the right upper extremity. Additionally, for safety concerns related to her history of syncope, I conclude that the claimant should avoid all exposure to hazards or the use of ladders, ropes, or scaffolds. She would appear to require the use of a cane for ambulation as well. The record has previously reflected her using a single point cane and indicated that she ambulated with a cane to prevent falling. (Exhibits 10F/7; 12F/2). She testified that she holds her cane with her left hand. The foregoing conclusions are not wholly out of proportion with the overall medical and other evidence of record and have been duly accounted for within the above-stated residual functional capacity finding.

As for the medical opinion evidence, I note that I have reviewed the various assessments endorsed by the claimant's primary care physician, Erin E. Marchand, M.D. Said assessments cannot be found particularly persuasive. Exhibits 5F and 14F are detailed physical assessments that would basically preclude even sedentary work. For example, Dr. Marchand suggested at Exhibit 5F that the claimant could sit for four hours in an eight-hour workday and that she could never stoop, and she suggested at Exhibit 14F that the

claimant could sit for five hours in an eight-hour workday, that she could never stoop, and that she could occasionally handle and finger. Such assessments are clearly not well supported by or consistent with the prior examination findings referenced herein that reflected the claimant to have 5 over 5 strength. Nor are they commensurate with the above-referenced magnetic resonance imaging relevant to the claimant's lumbar spine. The totality of the evidence certainly does not consistently demonstrate an inability to sit, stoop, or use the upper extremities sufficiently to perform the limited range of sedentary work described in the above-stated residual functional capacity finding. Dr. Marchand also submitted a mental medical source statement at Exhibit 4F, which is not even internally consistent. Indeed, Dr. Marchand endorsed no significant mental limitations. Instead, she based this opinion on the claimant's physical complaints, which is not an adequate basis to adopt mental limitations. Additionally, Exhibit 8F shows that Dr. Marchand has suggested that syncope would prevent the claimant from working. Yet, such an assessment is not supported by or consistent with the claimant's longitudinal history of syncopal episodes as reflected in the objective record. As previously indicated in this decision, a debilitating frequency of syncope cannot sufficiently be established by the longitudinal treatment narrative. Exhibit 6E is likewise noted to show that Dr. Marchand endorsed an application for a disabled parking placard, which provided the claimant to have a severe impairment limiting or preventing the ability to walk. To the extent that the claimant would be limited to sedentary work and would need to use a cane for ambulation, Exhibit 6E is found somewhat persuasive. However, it cannot be considered a fully persuasive assessment supported by and consistent with other evidence in any event, as it does not adequately detail exactly how the claimant's ability to walk is restricted.

Lastly, Exhibits 2A and 3A are also noted to show that State agency medical consultants Neil Armstrong, M.D., and Robert Culbertson, M.D., found the claimant capable of a range of medium work. This is not supported by or consistent with the evidence considered in its entirety, which, as previously indicated, does show there to have been some instances of the claimant having diminished right leg strength or issues with right foot drop. Accordingly, the administrative findings of the State agency medical consultants are determined to be unpersuasive overall.

(Tr. 65-67).

The ALJ set forth an accurate recitation and analysis of the medical evidence. Additionally, the ALJ explained in detail why Plaintiff's statements—concerning the intensity, persistence, and limiting effects of her physical symptoms—were not consistent with the medical evidence. Further, the ALJ's discussion comports with 20 C.F.R. § 404.1520c(b)(2) because it addresses both the supportability and consistency factors in the context of assessing the persuasiveness of each of Dr. Marchand's medical opinions and the prior administrative medical findings of Drs. Armstrong and Culbertson. For the most part, the ALJ found Dr. Marchand's opinions not particularly persuasive because they were not supported by her own treatment records, and they were inconsistent with medical evidence from other treating sources. Contrary to Plaintiff's assertion, the ALJ did not inappropriately play doctor. Instead, the ALJ weighed the medical evidence, Plaintiff's subjective statements, Dr. Marchand's medical opinions, the prior administrative medical findings, and gave Plaintiff the benefit of the doubt by deciding to impose slightly less restrictive physical, postural, manipulative, and environmental limitations than what Dr. Marchand's opinions alone would have warranted. The ALJ's imposition of these slightly less restrictive physical, postural, manipulative, and environmental limitations ultimately benefited Plaintiff and cannot constitute error. Moreover, substantial evidence in the record supports the ALJ's RFC determination.

IV. **CONCLUSION**

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion . . ." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (cleaned up). Regardless of how this Court may view the evidence, it is

not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. *Id.* After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law. Therefore, Plaintiff is not entitled to relief with regard to her challenges to the ALJ's RFC determination.

## V. ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

April 15, 2025

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:   Counsel